THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JAY HEATH, EDWARD SHAPIRO, and DAISY BECERRA LOPEZ, individually and on behalf of all similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>INSURANCE TECHNOLOGIES CORP. and ZYWAVE, INC.,<br><br>Defendants. | Case No.: 3:21-cv-01444-N |

**PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF COSTS AND EXPENSES, AND SERVICE AWARDS**

**I.      INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 23 and the Court's March 21, 2022 Order Granting Preliminary Approval of Class Action Settlement Agreement and Conditionally Certifying Settlement Class for Settlement Purposes Only (the "Preliminary Approval Order") (ECF No. 39) in the above-captioned class action, Plaintiffs Jay Heath, Edward Shapiro, and Daisy Becerra Lopez (collectively, "Representative Plaintiffs" or "Plaintiffs"), by and through John A. Yanchunis and Ryan D. Maxey of Morgan & Morgan Complex Litigation Group; Gary E. Mason of Mason LLP; M. Anderson Berry of Clayeo C. Arnold, a Professional Law Corp.; Gary Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, and Joe Kendall of Kendall Law Group, PLLC  (together, "Class Counsel"), respectfully submit this Motion for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, and Service Awards ("Fee Motion").  Specifically, Plaintiffs move this Court to approve (1) an award of attorneys' fees in the amount of $3,666,666.67, which is one third of the Settlement Fund; (2) reimbursement of reasonable costs

1

and expenses not to exceed $30,000; and (3) a service award of $2,000 to each of the Representative Plaintiffs, for a total of $6,000.

In common fund cases such as this one, precedent in this Circuit establishes that this Court has discretion to use either the percentage or lodestar method to determine whether the requested fee award is appropriate. As demonstrated below, under either method, the requested fee award is reasonable and well within the range of fees awarded in this Circuit. The requested costs and expenses of $8,666.63 are also reasonable. Finally, the requested service awards constitute modest compensation to acknowledge Plaintiffs' time, commitment, and zealous prosecution of this action alongside Class Counsel.

Respectfully, this Court should grant Class Counsel's Fee Motion.

## II. INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 34) and Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 35) filed on February 28, 2022 and the accompanying Exhibits, including the proposed Settlement Agreement, filed in conjunction therewith (ECF Nos. 35-1, 35-2, and 35-3).[1]

## III. LEGAL STANDARD

Under the well-settled "common fund" doctrine, attorneys who achieve a recovery for the benefit of a class in the form of a common fund are entitled to an award of fees and expenses from that fund as compensation for their work. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472

---

[1] This Court granted the Motion for Preliminary Approval of Class Action Settlement on March 21, 2022 (ECF No. 39).

(1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970). District courts may "award reasonable attorney's fees that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In class action settlements, district courts retain an "independent duty" to "ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel." *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 227 (5th Cir. 2008); *see also* Fed. R. Civ. P. 23, advisory committee's notes to the 2003 Amendments, subdivision (h) ("The agreement by a settling party not to oppose a fee application up to a certain amount, for example, is worthy of consideration, but the court remains responsible to determine a reasonable fee."); *see also* Manual for Complex Litigation § 14.231 (4th ed. 2004).

## IV.  ARGUMENT

### A.  The Award Sought for Attorneys' Fees Is Reasonable and Appropriate

To calculate attorneys' fees in common fund cases, courts in the Fifth Circuit will typically use: (1) the percentage of the fund method, in which the court awards fees as a reasonable percentage of the common fund; cross-checked with (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012) (endorsing "the district courts' continued use of the percentage method cross-checked with the *Johnson* factors"). *See also Matthews v. Priority Energy Servs.*, 2018 U.S. Dist. LEXIS 82716, at *3 (E.D. Tex. Apr. 20, 2018) (awarding "40% of the gross total award"). In cross-checking the percentage fee, "courts set the lodestar multiplier by applying the *Johnson*[2] factors." *Union Asset Mgmt. Holding A.G.*,

---

[2] *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).

3

669 F.3d at 643 n.26. Here, the reasonableness of the fee request is demonstrated under the percentage of the fund method and is further confirmed by a loadstar cross-check.

                **1.**       **Plaintiffs' Fees Request Is Reasonable and Appropriate under the Percentage of the Fund Method**

The Fifth Circuit has employed, and even favors, the percentage of the fund method when assessing whether the awards sought for attorneys' fees are reasonable and appropriate. *See Longden v. Sunderman*, 979 F.2d 1095, 1100 n.11 (5th Cir. 1992) (affirming district court's percentage fee award in securities class action, noting that the district court stated its preference for the percentage of recovery approach "as a matter of policy."); *Ramirez v. J.C. Penney Corp., Inc.*, No. 6:14-CV-601, 2017 WL 6462355, at *5 (E.D. Tex. Nov. 30, 2017), report and recommendation adopted, No. 6:14CV601, 2017 WL 6453012 (E.D. Tex. Dec. 18, 2017); *Cunningham v. Kitchen Collection, LLC*, No. 4:17-CV-770, 2019 WL 2865080, at *3 (E.D. Tex. July 3, 2019); *Batchelder v. Kerr-McGee Corp.*, 246 F. Supp. 2d 525, 531 (N.D. Miss. 2003) ("A percentage fee approach, as opposed to a lodestar computation, is the preferred method for determining awards of attorneys' fees in common fund, or class action, cases."). In this action, ITC has agreed to pay $11,000,000 into a Settlement Fund, which will fund, in addition to the claims of class members, the service awards, attorneys' fees, and costs and expenses. *See* ECF No. 35-2, Settlement Agreement, § 10.2. Class Counsel request an award of one-third (33.3 percent) of the Settlement Fund, or $3,666,666.67. *Id.*, § 10.2.

This fee is reasonable and appropriate. Courts in the Fifth Circuit as a rule award fees in the 30 percent to 36 percent range. *See, e.g., Welsh v. Navy Fed. Credit Union*, 2018 U.S. Dist. LEXIS 227456, at *49 (W.D. Tex. Aug. 20, 2018) ("When the percentage method is used, fee awards commonly fall between 20% at the low end and 50% at the upper end[.]") (citing *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 503 (N.D. Miss. 1996) ("The petitioners present to the

court citations of numerous cases wherein the presiding judge awarded fees within a range of fifteen (15) to fifty (50) percent."); *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 U.S. Dist. LEXIS 69143, at *34 (N.D. Tex. Apr. 25, 2018) (awarding one-third of the Settlement Fund); *Schwartz v. TXU Corp.*, 2005 U.S. Dist. LEXIS 27077, at *87 (N.D. Tex. Nov. 8, 2005) ("Indeed, courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method."). Therefore, the requested attorneys' fees of one-third of the Settlement Fund, or $3,666,666.67, is reasonable.

### 2. Plaintiffs' Fee Request Is Reasonable and Appropriate Under the Lodestar Method

Under the lodestar approach, courts first multiply the number of hours reasonably spent on the case by each attorney's reasonable hourly rate to compute the lodestar, and then adjust that figure (by applying a multiplier) depending on the respective weights of the twelve factors set forth in *Johnson*. *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996) (citing *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.), cert. denied, 133 L. Ed. 2d 113, 116 S. Ct. 173 (1995); *Johnson*, 488 F.2d at 717-19). To compensate Plaintiffs' counsel for their work in prosecuting this case, it is appropriate to use current billing rates in calculating the lodestar. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) (current rates, rather than historical rates, should be applied to compensate for delay in payment). Courts also determine whether the hourly rates are reasonable by comparing them to prevailing hourly rates in the community for similar services by lawyers of comparable caliber in their skills, legal reputation, experience, and status (e.g., partner, counsel, associate). *See*, *e.g.*, *City of San Antonio v. Hotels.com, L.P.*, 2017 U.S. Dist. LEXIS 58384, at *30 (W.D. Tex. Apr. 17, 2017); *McClain v. Lufkin Indus.*, 649 F.3d 374, 381 (5th Cir. 2011). "The reasonable hourly rate is the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.' The relevant legal

5

community is the community where the district court sits." *Fessler v. Porcelana Corona de Mex., S.A. de C.V*, No. 4:17-CV-00001, 2020 WL 1974246, at *5 (E.D. Tex. Apr. 24, 2020).

Here, as reflected in the Joint Declaration of John A. Yanchunis, M. Anderson Berry, Gary Klinger, Gary Mason, and Joseph Kendall in Support of Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Costs and Expenses, and Service Awards ("Joint Decl."), Plaintiffs' counsel collectively spent 734.10 hours litigating this action, for a total lodestar of $587,409.90. *See* Joint Decl., ¶ 29 and Ex. A thereto. The time reflected in Plaintiffs' counsel's lodestar calculations are reasonable and were necessary for the effective and efficient prosecution and resolution of this litigation. *See* Joint Decl., ¶¶ 29, 43. In addition, the fees and expenses incurred in this litigation are all of a type that would normally be charged to a fee-paying client in the private legal marketplace. *See* Joint Decl., ¶ 36. Plaintiffs' counsel's current rates are also appropriate in light of prevailing rates for similar legal services provided by lawyers of reasonably comparable skill, experience, and reputation. *See* Joint Decl., ¶ 26. Other courts have found Plaintiffs' counsel's rates to be reasonable and have approved them. *Id.; see also*, *e.g.*, *Legere-Gordon v. Firstcredit Inc.*, 2021 U.S. Dist. LEXIS 104612, at *13 (D. Idaho June 2, 2021). Further, Plaintiffs' requested fee award represents only a 6.24 multiplier of Plaintiffs' counsel's collective lodestar. Joint Decl., ¶ 30. Because there is additional work required to obtain final approval, monitor the settlement, and assist Class Members, this multiplier will ultimately decrease. *Id.* Therefore, the one-third (33.3 percent) fee request under the lodestar/multiplier method here verifies its reasonableness.

        **1)**        **The *Johnson* Factors Support that the Requested Fee Is Fair and Reasonable under the Lodestar Method**

Application of the *Johnson* factors confirms that the requested fee is fair and reasonable under the lodestar method. The twelve *Johnson* factors are:

> (1) The time and labor required. . . . (2) The novelty and difficulty of the questions. . . . (3) The skill requisite to perform the legal service properly. . . . (4) The

> preclusion of other employment by the attorney due to acceptance of the case. . . . (5) The customary fee [for similar work in the community]. . . . (6) Whether the fee is fixed or contingent. . . . (7) Time limitations imposed by the client or the circumstances. . . . (8) The amount involved and the results obtained. . . . (9) The experience, reputation, and ability of the attorneys. . . . (10) The "undesirability" of the case. . . . (11) The nature and length of the professional relationship with the client. . . . [and] (12) Awards in similar cases.

*Johnson*, 488 F.2d at 717-19. Each of the *Johnson* factors will vary, depending on the case, and, rather than imposing a rigid application of each factor, the Fifth Circuit has entrusted the lower courts to apply those factors in view of the circumstances of a particular case. *Brantley v. Surles*, 804 F.2d 321, 325-26 (5th Cir. 1986). Courts should pay special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation, and ability of counsel. *Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir. 1990). Here, however, all the *Johnson* factors support the requested fees award.

### (a)   The time and labor required for the litigation

In particular, the first *Johnson* factor (the time and labor required) supports a finding that the requested award of fees is appropriate because this case consumed the attention of many reputable law firms and partners, associates, and paralegals, who devoted a substantial amount of hours focused on the issues, and flexibility and cooperation to meet the deadlines required. In particular, pursuant to the joint declaration of Class Counsel submitted herewith, Plaintiffs' counsel dedicated a total of 734.10 hours on this matter as of June 3, 2022, for a total collective lodestar of $587,409.90. Joint Decl. ¶¶ 26, 29. Class Counsel, among other things, have:

a. before filing the complaint, investigated the potential claims against Defendants, interviewed potential plaintiffs, and gathered information about the Data Incident and its potential impact on consumers;

b. conducted a pre-suit factual investigation including interviewing the Plaintiffs and reviewing their documents, background and damages, and continued the

7

investigation during the pendency of this case, by attempting to locate and interview potential witnesses and reviewing hundreds of pages of public documents, including Defendant's public statements, letters to consumers, and websites, developing information from third-parties, and scouring internet websites for information about the Data Incident and Defendant' business operations in general and specifically pertinent to the Data Incident;

c. Assisted in drafting and filing Plaintiffs' complaint, amended complaint and other filings;

d. Discussed with Defendants the potential for early resolution, and exchanged confidential information in advance of the mediation, which information provided by Defendants aided Plaintiffs' counsel in developing an understanding of the Data Incident, the breadth of the Data Incident, the size and composition of the Class and the potential damages to Class Members;

e. reviewed and analyzed documents produced by Defendants and solicited bids from claims administrators and Identity-Theft Protection services providers;

f. conducted direct negotiations with Defendants through its counsel, then drafted a lengthy mediation brief and prepared for and participated in a global mediation session with Defendants and mediator Mr. Nolland on December 13, 2021, as well as engaged in follow-up communications after the mediation to resolve this matter, which proved successful in resolving the claims and resulted in the terms that would become the present Settlement;

    g. prepared the Settlement Agreement and supporting documents, including the Notice, Summary Notice, claim form, proposed preliminary and proposed final approval orders;

    h. prepared and submitted Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (ECF Nos. 34 and 35) which was ultimately granted when the Court preliminarily approved the Settlement (ECF No. 39); and

    i. when necessary, conferred with one another about the status, strategy, and direction of the case and settlement negotiations. Joint Decl., ¶ 25

Therefore, the time and labor required supports the requested fee.

### (b) The novelty and difficulty of the questions

The second *Johnson* factor also weighs in favor of awarding the fee requested because data breach class actions are still new and can present novel and complex issues, making a successful outcome difficult to predict. *Id*., ¶ 18. Also, a successful outcome would ensue, if at all, only after prolonged and arduous litigation with an attendant risk of drawn-out appeals. *Id.* Among national consumer protection class action litigation, data breach cases are some of the most complex and involve a rapidly evolving area of law. *Id*., ¶ 20. At present, courts have certified only three classes in this area. Moreover, the theories of damages remains untested at trial and appeal. As one federal district court recently observed:

> Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc*., No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.").

*Fox v. Iowa Health Sys*., No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021). These cases are particularly risky for plaintiffs' attorneys. *Id.* Consequently, the requested fee award appropriately compensates for the risk undertaken by Plaintiff's counsel here.

9

### (c)   The skill requisite to perform the legal service properly

The next *Johnson* factor is the skill requisite to perform the legal service properly. Counsel exemplifies this factor where they "performed diligently and skillfully, achieving a speedy and fair settlement, distinguished by the use of informal discovery and cooperative investigation to provide the information necessary to analyze the case and reach a resolution." *King v. United SA Fed. Credit Union*, 744 F. Supp. 2d 607, 614 (W.D. Tex. 2010) (citing *Di Giacomo v. Plains All Am. Pipeline*, 2001 U.S. Dist. LEXIS 25532, at *36 (S.D. Tex. Dec. 18, 2001)). Here, the lawyers representing Plaintiffs are some of the most experienced in this area of the practice and have successfully litigated the largest data breaches in this country to date.[3] In addition, one of the members of Plaintiffs' team is a frequent speaker nationally and internationally in the area of privacy and data misuse and data breach litigation. Joint Decl., ¶ 1. Finally, the result achieved in this Settlement is notable because the parties were able, through capable and experienced counsel, to reach a negotiated Settlement without involvement of the Court in discovery disputes. *Id.*, ¶ 17. Class Counsel worked on behalf of the Settlement Class to obtain information from Defendant regarding the Data Incident and used that information (along with their experience and the knowledge gained from other data breach class actions) to negotiate the Settlement. *Id.* The Settlement reached here is notable for the simplicity of the claims process; the relief which addresses the type of injury and repercussions sustained by consumers in the wake of a Data Incident of the type here; the speed with which counsel was able to secure a favorable settlement; and the cooperation of Plaintiffs' counsel which aided in the ability to resolve this matter

---

[3] Joint Decl, fn. 7; Class Counsel's experience and firm resumes are in the record, ECF Nos. 35.1and 35.3.

efficiently. *Id.*, ¶¶ 18-19. Therefore, this factor also weighs in favor of approval of the requested fee.

### (d) Preclusion of other employment by the attorney due to acceptance of the case

Furthermore, the application of *Johnson* factor 4 (preclusion of other employment by the attorney due to acceptance of the case) provides some level of support for the requested fees because the pursuit of this litigation required a certain concentration of effort which prohibited counsel from engaging in other litigation. Joint Decl., ¶¶ 38-39. Plaintiffs' counsel invested substantial time, effort, and resources into the litigation of this risky and uncertain case with no guarantee or promise of return on their investment. *Id*. Plaintiffs' counsel seek reimbursement of their lodestar already incurred and for time to be spent wrapping up the litigation. *Id*., ¶¶ 29-30.

### (e) Customary fee for similar work in the community

As discussed previously, the requested the customary billing rates reflect the particular legal expertise of Plaintiffs' counsel and are also based on established competitive market rates for national cases involving complex and class action litigation. Reasonable hourly rates are determined by "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Class Counsel are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation. *Blum*, 465 U.S. at 895 n.11. Here, the relevant community is that of attorneys practicing multi-state class action litigation.

Class Counsel's lodestar is calculated using rates that have been accepted in numerous other data breach and consumer class action cases. Class Counsel's rates also compare very favorably with rates approved by other trial courts in data breach and other class action litigation, by what attorneys of comparable skill and experience charge in similar areas of specialization. Joint Decl., ¶ 26; *see Spano v. Boeing Co.*, No. 06-CV-743-NJR-DGW, 2016 WL 3791123, at *3

(S.D. Ill. Mar. 31, 2016) (approving these hourly rates: attorneys with at least 25 years of experience, $998 per hour; for attorneys with 15–24 years of experience, $850 per hour; for attorneys with 5–14 years of experience, $612 per hour; for attorneys with 2–4 years of experience, $460 per hour; for paralegals and law clerks, $309 per hour; for legal assistants, $190 per hour).

The hourly rates charged by Class Counsel are commensurate with hourly rates charged by their contemporaries around the country, including those rates charged by lawyers with similar experience who practice in the area of data breach class litigation. Joint Decl., ¶ 26; *see, e.g., Fox*, 2021 WL 826741, at *6 (awarding $1,575,000 in attorneys' fees and costs, at hourly rates from $815-$865 per hour for partners, $550-$625 for senior associates, $415-$500 for associates, and $215-$350 for paralegals).

Class Counsel's hourly rates are also on par with market rates usually charged by other plaintiffs' firms handling multistate data-breach class actions. *See Perdue v. Hy-Vee, Inc.,* No. 19-1330, 2021 WL 3081051, at *5 (C.D. Ill. July 21, 2021) (approving reasonable hourly rates requested by Class Counsel of $700-$815 for partners, $325-$700 for associates, $200-$275 for paralegals, and $150-$225 for law clerks); *In re Equifax Inc. Customer Data Sec. Breach Litig.,* No. 1:17-MD-2800-TWT, 2020 WL 256132, at *39 (N.D. Ga. Mar. 17, 2020) (finding reasonable hourly rates charged by partners who billed $1050, $1000 $750, and $935 per hour); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *26 (N.D. Cal. July 22, 2020) (finding reasonable rates from $450 to $900 for partners, $160-$850 for non-partner attorneys, and $50 to $380 for paralegals); ); *Fulton-Green v. Accolade, Inc.*, No. CV 18-274, 2019 WL 4677954, at *12 (E.D. Pa. Sept. 24, 2019) (finding reasonable hourly rates range $202 to $975 per hour); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *16 (N.D. Cal. Aug. 17, 2018) (finding reasonable hourly rates of partners from $400

to $970, non-partner attorneys from $185 to $850, and non-attorneys from $95 to $440). *See* Joint Decl.. These rates are reasonable in light of Class Counsel's significant experience and the relatively specialized nature of this data breach class actions. These rates have been approved by other courts. As such, the application of the *Johnson* factor 5 supports the requested attorneys' fees.

### (f)  Whether the fee is fixed or contingent

Plaintiffs' counsel undertook this litigation on a purely contingent basis, with no assurance of recovery of expenses or compensation for their time. Joint Decl., ¶ 32. The nature of contingency fees is that they are inherently uncertain and require counsel to assume more risk than in cases where compensation is based on billable hours. *Id.* Accordingly, Johnson factor 6 tips the scales in favor of the requested award because the percentage of fee applied to the total recovery obtained for the client reflects the uncertain nature of contingency fee agreements, and the fee percentage is generally one third of the total recovery and can be higher where risk and likely case expenses are expected to be relatively high. *Id.*

### (g)  Time limitations imposed by the client or the circumstances

The time constraints here were typical of like-litigation; this factor is therefore neutral.

### (h)  The amount involved and the results obtained

The most critical factor in determining the reasonableness of a fee award is the "degree of the success obtained." *Fessler v. Porcelana Corona De Mex., S.A.*, 2022 U.S. App. LEXIS 804, at *15 (5th Cir. Jan. 10, 2022) (citing *Farrar v. Hobby*, 506 U.S. 103 (1992)). The result achieved in this Settlement weighs in favor of the requested attorneys' fees. This most critical factor supports the requested fee because the Settlement Agreement provides significant monetary and mitigative relief. Joint Decl., ¶¶ 15-17. Specifically, ITC will establish a Settlement Fund of $11,000,000,

13

which will be the source of all settlement costs and awards payments to Settlement Class Members, administrative costs, service awards, and attorneys' fees, and costs and expenses. *Id.* Settlement Class Members are eligible to receive the following relief: (1) for California residents at the time of the Data Breach, a cash payment of $100 to Class Members whose Social Security number and/or driver's license number were potentially exposed in the Data Breach, as confirmed by Defendants' business records, which amount may be reduced pro rata to the extent total claims exceed $1,590,400.00 or increased up to $300 to the extent funds remain; (2) up to $5,000 for certain expenses incurred on or after February 27, 2021, with supporting documentation such as receipts, account statements; (3) up to $200 reimbursement of time spent remedying identity theft, misuse of personal information, credit monitoring, freezing credit reports, and/or other issues related to the Data Breach and which amount may be reduced pro rata to the extent total claims exceed $2,878,333.00; and (4) 12 months of Financial Shield, an identity theft detection services provided by Aura, and 12 months of identity restoration services, also provided by Aura. Joint Decl., ¶¶ 14-16; *see also* ECF No. 35, pp. 4-8.

### (i) The experience, reputation, and ability of the attorneys

This factor has been addressed under factors 1 and 3 above. Overall, throughout this litigation, Plaintiffs' counsel have demonstrated to the Court that they have competently handled this litigation. In the process of reaching this Settlement, this case was defended by highly qualified and nationally recognized counsel with a great deal of experience in data breach cases. *Id.*, ¶ 22. As such, the prompt resolution of the case further demonstrates that Plaintiffs' counsel managed this action skillfully, always mindful of Plaintiffs' and Class Members' best interests, while facing challenging opponents, which further attests to the experience, reputation, and the ability of the attorneys involved.

### (j) The undesirability of the case

Given that data breach cases pose unique challenges, with areas of law not settled and making outcomes of cases more uncertain and hard to predict, these cases may be less desirable. That is particularly true where, as here, the data compromised did not include financial account numbers or protected health information. Moreover, class action litigation is more involved and more lengthy, and requires more discovery and more investigation than other types of litigation. Finally, Plaintiffs' counsel here undertook this litigation on a contingency fee basis, which in itself carries more risk. All these factors contribute to the undesirability of the case.

### (k) The nature and length of the professional relationship with the client

Plaintiffs' counsel spent time building relationships with Plaintiffs, discussing Plaintiffs' claims, and addressing Plaintiffs' questions and concerns. As addressed under *Johnson* factor 1, before filing the Complaint, Plaintiffs' counsel investigated the potential claims against Defendant, interviewed potential plaintiffs, and gathered information about the Data Incident and its potential impact on consumers. *Id.*, ¶ 25. Plaintiffs' counsel also regularly conferred with Plaintiffs about the status, strategy, and direction of the case and settlement negotiations. *Id.*

### (l) Awards in similar cases

Finally, *Johnson* factor 12 (awards in similar cases) also supports the requested fee award. The Settlement is similar to results obtained in other data breach cases, and which include, for instance: *Culbertson, et al v. Deloitte Consulting LLP*, Case No. 1:20-cv-3962-LJL (S.D.NY. 2022); *Carrera Aguallo v. Kemper Corp.*, Case No. 1:21-cv-01883 (N.D. Ill. Oct. 27, 2021), ECF 33 (finally approving $2,500,000 in attorneys' fees in data breach class action involving 6 million class members); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, 2019 U.S. Dist. LEXIS 135573, at *24 (N.D. Ohio Aug. 12, 2019) ("Considering the above factors, the Court finds that

30 percent [request for attorneys' fees] of the $4,325,000 aggregate amount is appropriate."); *Henderson V. Kalispell Regional Healthcare*, No. CDV 19-0761 (Montana Eighth Judicial District Court, Cascade County) (court awarded attorneys fee of 33% of the common fund of $4.2 million). For these reasons, Class counsel should be reasonably compensated for its successful efforts in representing the Class and achieving a beneficial settlement in just four months.

In sum, Class Counsel's requested fee of $3,666,666.67, or one-third percent of the Settlement Fund, is facially reasonable under the percentage method, and the lodestar is entitled to a presumption of reasonableness under the lodestar method. Application of the *Johnson* factors confirms the appropriateness of the requested fee award, which, respectfully, should be granted.

### B.  Plaintiffs' Expense Reimbursement Request is Reasonable

District courts allow costs and expenses, the sort that lawyers ordinarily include in their bills to clients, to be recovered from the common fund. *See City of San Antonio*, 2017 U.S. Dist. LEXIS 58384, at *54; *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012); Fed. R. Civ. P. 23(h) (authorizing the recovery of "nontaxable costs"); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 334 (W.D. Tex. 2007) ("The appropriate analysis to apply in determining which expenses are compensable in a class action case is whether such costs are of the variety typically billed by attorneys to clients."). The joint declaration filed herewith demonstrates that the expenses sought to be reimbursed were all advanced by Plaintiffs' counsel, were necessarily incurred in the prosecution of this case, and were also properly documented and prepared using contemporaneous time records. *See* Joint Decl., ¶ 34-37. and Ex. A thereto. Such costs and expenses included research, court fees, mediation fees, and other services that are necessary and reasonable to prosecuting a class action. *Id.* The requested

reimbursement of $8,666.63 in costs and expenses are therefore appropriately reimbursable to Plaintiffs' counsel.

### C. The Requested Service Awards Are Warranted

Class Counsel move this Court to approve a service award of $2,000 to each Plaintiff for their service as Class representatives. Courts approve reasonable service awards to compensate the named plaintiffs for their services. *Guadalupe v. Am. Campus Cmtys. Servs.*, 2020 U.S. Dist. LEXIS 259660, at *7 (W.D. Tex. Oct. 23, 2020); *see also Matson v. NIBCO Inc.*, 2021 U.S. Dist. LEXIS 201909, at *36 (W.D. Tex. Oct. 20, 2021) (finding that an award of $10,000 to each plaintiff was appropriate under the circumstances of the case and would adequately compensate plaintiffs for the service they provided and the burdens they shouldered.); *Blackburn v. Conduent Commer. Sols. LLC*, 2020 U.S. Dist. LEXIS 255284, at *8 (W.D. Tex. Dec. 22, 2020) (approving an award of $2,500 where plaintiff was instrumental in identifying the alleged violation and building the case). Likewise, the Plaintiffs here have been instrumental in assisting Plaintiffs' counsel throughout this proceeding. Joint Decl., ¶ 45. Their involvement was not merely nominal. *Id.* They initiated and remained in contact with Plaintiffs' counsel; considered and questioned various pleadings in this case, including the Complaint, amended complaint and settlement papers;monitored and periodically visited with Plaintiffs' counsel; provided background documents and followed the progress of this litigation; and have been actively involved in the prosecution of the case, to ensure that Class Members received the best recovery possible given the particular circumstances and risks of the case. *Id.* Balancing the services that Plaintiffs rendered against the modest amount of the $2,000 for each of the three Plaintiffs (i.e., $6,000) , the Court should find such amount is reasonable.

### V. CONCLUSION

For these aforementioned reasons, the Court should grant Plaintiffs' Fee Motion.

Dated: June 3, 2022                                     Respectfully submitted,

*Joe Kendall* [signature]

_____

Joe Kendall
Texas Bar No. 11260700
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Ste. 1450
Dallas, TX 75219
Telephone: 214/744-3000
Facsimile: 214/744-3015
jkendall@kendalllawgroup.com

JOHN A. YANCHUNIS
RYAN MAXEY*
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: 813-559-4908
Facsimile: 813-222-4795
jyanchuins@forthepeople.com
rmaxey@forthepeople.com

M. ANDERSON BERRY*
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Facsimile: (916) 924-1829
aberry@justice4you.com

Gary M. Klinger*
**MILBERG COLEMAN BRYSON PHILLIPS**
**GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Fax: (865) 522-0049-
Email: gklinger@milberg.com

David K. Lietz*

18

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW
Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
dlietz@milberg.com

GARY E. MASON*
DANIELLE PERRY*
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Avenue NW, Suite 305
Washington, DC 20016
Telephone: (202) 429-2290
Facsimile: (202) 429-2294
gmason@masonllp.com

*Attorneys for Plaintiffs and the Class*

*Pro hac vice*